# EXHIBIT 1

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBOCAST, INC.,
a Delaware corporation,

      Plaintiff,

   v.

YOUTUBE LLC., a Delaware limited liability
company; and GOOGLE LLC, a
Delaware limited liability company,

      Defendants.

C.A. No. 22-304 (RGA) (JLH)

**JURY TRIAL DEMANDED**

[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED

INFORMATION

1.    **Purpose.** This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

2.    **General Provisions.**

    a.    **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

    b.    **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. The parties here agree to delay search and production of

1

electronic mail and electronic mail documentation ("email") until after the parties have substantially completed their primary document productions by November 17, 2023. Search and production of email will otherwise be governed by the terms of this Order applying to ESI.

c.      **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

i.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

ii.      Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

d.      **Privilege.**

i.      The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

ii.      With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

iii.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

**Error! Unknown document property name.**

iv.     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privilege or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding.  Information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if requested.  Nothing in this paragraph is intended to abrogate the provisions of the Protective Order governing disclosure of privileged or work-product protected documents.

3.     **Initial ESI Disclosures**. Within thirty (30) calendar days after the entry of this Order or within a timeframe to be established, each party shall disclose:

a.     **Custodians.** Up to five (5) custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.[1]

b.     **Non-custodial data sources.**[2]  A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

c.     The parties shall identify any issues relating to:

---

[1]  As these disclosures are "initial," each party shall be permitted to supplement.

[2]  That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

Error! Unknown document property name.

          i.       Any additional sources of ESI not identified in Schedule A (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

          ii.      Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

          iii.     Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

4.      **Discovery in Patent Litigation**.

      a.      Absent a showing of good cause, discovery from Defendants beyond that provided for in Paragraph 3(g)(i)(d) and 3(g)(iv) of the Joint Scheduling Order (D.I. 53) shall be limited to a term of 6 years before the filing of the complaint until the latest expiration date of the patents-in-suit, except that discovery related to asserted prior art shall not be so limited.

5.      **Specific E-Discovery Issues.**

      a.      **On-site inspection of electronic media.**  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

      b.      **Search methodology.**

          i.       If the producing party elects to use search terms to locate potentially responsive ESI, the requesting party may propose a list of 5 terms to be used in this litigation (irrespective of any other terms the producing party may employ to locate documents for potential use in the litigation).  Absent a showing of good cause, a requesting party may not request

Error! Unknown document property name.

additional terms to be used in connection with the electronic searches. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not discoverable under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.  The producing party shall search (i) the non-custodial data sources identified in accordance with Paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with Paragraph 3(a).

        ii.     Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.  Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), or Program Installers.

        iii.     A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across Custodians. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved

responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment.

c.      **Format.**  ESI and non-ESI shall be produced to the requesting party in the formats described in Schedule B.  When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable (i.e. such as within a document management system ("DMS"), the revision history.

6.      **Modification**.

This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Order will be titled sequentially as follows, "First Modified Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Order will supersede the previous Order.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

IT IS SO ORDERED this        day of                   2023

_____
THE HONORABLE RICHARD G. ANDREWS
UNITED STATES DISTRICT JUDGE

**Error! Unknown document property name.**

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last- opened dates.

5. Automatically saved versions of documents and emails.

6. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

7. Voice messages.

8. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

9. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

10. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

11. Logs of calls made from mobile devices.

12. Server, system or network logs.

13. Video and audio recordings.

14. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

15. Data remaining from systems no longer in use that is unintelligible on the systems in use.

16. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

**Error! Unknown document property name.**

**SCHEDULE B**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** ESI and non-ESI shall be produced to the requesting party as image files (e.g., TIFF) with searchable text files.  Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields:  BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists.  The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN.  The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |

9

| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| FILESIZE | Size (in bytes) of an electronic document (Edoc or attachment) |
| FILEEXTENSION | Suffix to a filename that indicates the file format of its content (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a

10

production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein. Any redactions or withholding of documents will be noted in a privilege log, along with the reason for redaction or withholding.

10. **Native File Productions.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text. This Stipulation does not govern access to computer code, e.g., source code, which shall be separately made accessible pursuant to the Protective Order entered in this case.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be produced on external hard drives, readily

Error! Unknown document property name.

accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

12

# EXHIBIT 2

01:12:40

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SENTIUS INTERNATIONAL, LLC,    )
                               )
            Plaintiff,         )
                               )  C.A. No. 18-1216-MN
v.                             )
                               )
HTC CORPORATION,               )
                               )
            Defendant.         )
_____)
SENTIUS INTERNATIONAL, LLC,    )
                               )
            Plaintiff,         )
                               )  C.A. No. 18-1217-MN
v.                             )
                               )
LG ELECTRONICS U.S.A., INC.,   )
et al.,                        )
                               )
            Defendants.        )


                    Tuesday, May 12, 2020
                    11:00 a.m.
                    Teleconference

                    844 King Street
                    Wilmington, Delaware

BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:

            FARNAN LLP
            BY:  BRIAN FARNAN, ESQ.
            BY:  ROSEMARY PIERGIOVANNI, ESQ.

            -and-

            CARR & FERRELL LLP
            BY:  ROBERT J. YORIO, ESQ.

                    Counsel for the Plaintiff

```
 1    APPEARANCES CONTINUED:

 2

 3

 4              RICHARDS LAYTON & FINGER, PA
                BY:  FREDERICK COTTRELL, ESQ.
                BY:  JASON RAWNSLEY, ESQ.
 5

 6              -and-

                KASOWITZ BENSON TORRES LLP
 7              BY:  JOHN W. DOWNING, ESQ.
                BY:  MARCUS A. BARBER, ESQ.
 8
                          Counsel for the Defendants
 9                        LG Electronics U.S.A., et al.

10

11              POTTER ANDERSON & CORROON
                BY:  STEPHANIE O"BYRNE, ESQ.
12
                -and-
13
                WILLIAMS SIMONS & LANDIS
14              BY:  JOHN WITTENZELLNER, ESQ.

15                        Counsel for the Defendant
                          HTC Corporation
16

17

18                         - oOo -

19                 P R O C E E D I N G S

20         (REPORTER'S NOTE:  The following telephone

21   conference was held remotely, beginning at 11:00 a.m.)

22

10:51:21 23

10:59:25 24              THE COURT:  Good morning, counsel.  Who is

11:00:17 25   there, please?
```

| | |
|---|---|
| 11:00:20 1 | MR. FARNAN:  Good morning, Your Honor.  Brian |
| 11:00:22 2 | Farnan and Rosemary Piergiovanni from Farnan.  And also Bob |
| 11:00:26 3 | Yorio from Carr & Ferrell for plaintiff. |
| 11:00:28 4 | THE COURT:  Okay.  Welcome. |
| 11:00:30 5 | MR. COTTRELL:  Good morning, Your Honor.  Fred |
| 11:00:32 6 | Cottrell from Richards Layton for the LG defendants.  Jason |
| 11:00:37 7 | Rawnsley from my office is also on.  And our co-counsel from |
| 11:00:41 8 | Kasowitz Benson, John Downing and Marcus Barber.  And |
| 11:00:47 9 | Mr. Downing will be presenting for LG. |
| 11:00:50 10 | THE COURT:  Okay.  Welcome to all of you as |
| 11:00:53 11 | well. |
| 11:00:53 12 | MS. O'BYRNE:  Your Honor. |
| 11:00:56 13 | THE COURT:  Go ahead. |
| 11:00:57 14 | MS. O'BYRNE:  I apologize.  I just wanted to let |
| 11:00:59 15 | you know, this is Stephanie O'Byrne from Potter Anderson |
| 11:01:03 16 | also on the line for HTC Corporation.  And also joining us |
| 11:01:07 17 | is John Wittenzellner from Williams, Simons & Landis. |
| 11:01:15 18 | MR. WITTENZELLNER:  Good morning, Your Honor. |
| 11:01:16 19 | THE COURT:  Good morning.  Welcome to you as |
| 11:01:18 20 | well.  Thanks to everyone for getting on the phone with us |
| 11:01:22 21 | this morning.  I reviewed the letters that were sent |
| 11:01:26 22 | regarding the e-mail issue.  And I guess what I needed to |
| 11:01:35 23 | understand after reading the letters was why -- I read |
| 11:01:46 24 | Sentius's letter saying that this is the standard practice |
| 11:01:50 25 | in this Court, et cetera.  But it does appear that there is |

11:01:54 1    only direct infringement at issue.  It seems like that's a

11:02:01 2    strict liability analysis where you look at the product and

11:02:04 3    you look at the claims, and what I didn't see in your letter

11:02:08 4    is why you need a substantial amount of e-mail discovery.

11:02:15 5          So let me hear first from Sentius on that issue.

11:02:19 6    What is it that's relevant here in conducting a wholesale

11:02:27 7    e-mail search?

11:02:31 8          MR. FARNAN:  Good morning, Your Honor.  Brian

11:02:33 9    Farnan.  I'll address Your Honor's question.  E-mails will

11:02:36 10   be relevant to several aspects of this case.  I'll go by

11:02:39 11   topic and within those topics.  First infringement, and then

11:02:42 12   we'll have damages, and then we'll have invalidity.

11:02:46 13         And defendant's proposal is e-mails are only

11:02:49 14   relevant in cases where there is willful infringement.  If

11:02:52 15   that was the case, the majority of our cases we wouldn't

11:02:55 16   have e-mail discovery.  But the fact is in almost every case

11:02:58 17   we have e-mail discovery.  When you look at infringement,

11:03:01 18   there will be discussions between personnel about the

11:03:05 19   spellcheck feature who were tasked with designing and

11:03:08 20   implementing the feature, there will be discussions between

11:03:12 21   engineers about source code, why a certain source code was

11:03:15 22   implemented and how it works.  Source code is much easier

11:03:19 23   showing a jury an e-mail explaining how it works than an

11:03:19 24   expert walking through source code that a jury doesn't

11:03:22 25   understand.  There will be a discussion about how the

spellcheck operates.  There will be a discussion about when
it was first added, chain of sense was added, and e-mails
between the engineers and maybe discussions about the
spellcheck features of competitors and why did they add the
spellcheck feature.  When you get the damages, it will talk
about the importance of the spellcheck feature as related to
apportionment compared to other features, e-mails about
customer demand and preferences for the spellcheck features.
There can be competitive e-mails.  There will be e-mails
about the cost of the feature.  And when we get to
invalidity, you get to they may contend in this case that
the invention was obvious.  They could have e-mails saying
that they could not find a solution to the problem, and now
they're trying to say that the solution that we have in the
patent and the claims was obvious.  And it will also go to
second considerations, failure to monitor, skepticism,
long-felt need.  And lastly, it will also go to knowledge.

We think e-mails, just like in every case in
this district, there are a lot of relevant information.  And
the important thing here to look at is the burden really is
on defendants to show good cause.  They're trying to flip
the burden and flip the whole discovery process.  They
haven't submitted any declarations about how this would be
unduly burdensome, how it would be costly.  Really we
shouldn't have to describe how it's relevant under the

11:04:45  1    normal process until they met that burden.  We're happy to,

11:04:49  2    as we just articulated, why it's relevant.  They certainly

11:04:50  3    haven't shown good cause to deprive us something that the

11:04:54  4    rules allow us to have.

11:04:59  5              THE COURT:  Okay.  Let me hear from defendants.

11:05:05  6              MR. DOWNING:  Your Honor, may it please the

11:05:07  7    Court, John Downing from Kasowitz, Benson & Torres.  Just

11:05:13  8    responding quickly to plaintiff's opening, the amounts of

11:05:19  9    e-mail discovery contemplated basically would touch all

11:05:24 10    issues in the case and that would not be consistent with

11:05:28 11    Rule 26(b)(1).

11:05:32 12              Second, plaintiff referenced --

11:05:36 13              THE COURT:  I'm sorry.  Can you explain what you

11:05:38 14    mean by that?  I missed it.

11:05:42 15              MR. DOWNING:  Sure, Your Honor.  Rule 26(b)(1)

11:05:45 16    restricts discovery to any party's claims and defenses.  It

11:05:48 17    restricts totally to what's proportional to the needs of the

11:05:52 18    case and considers whether the burden or expense of the

11:05:54 19    proposed discovery outweigh the likely benefit.  So there is

11:05:58 20    nothing in the rule that suggest that default e-mail

11:06:01 21    discovery is required in every case on all issues.  In fact,

11:06:04 22    it suggest the opposite.

11:06:06 23              Second, Your Honor, the Delaware default ESI

11:06:12 24    order's first paragraph is called cooperation.  This

11:06:15 25    contemplates that the parties will discuss discovery issues

11:06:19 1  at the outset of the case with a view toward what is

11:06:22 2  actually needed.  And this is consistent with Federal Rule

11:06:25 3  of Civil Procedure 26(f)(3), which instructs the parties to

11:06:29 4  discuss what is needed for discovery, how to phase it and

11:06:32 5  what limitations should be imposed, including specifically

11:06:35 6  ESI.

11:06:36 7          So thinking about the scope and timing of e-mail

11:06:40 8  discovery based on the claim, it is not radical or

11:06:46 9  unprecedented, it's required by the rules and contemplated

11:06:49 10 by the default ESI order in Delaware.

11:06:53 11         And then I would like to -- go ahead, Your

11:06:56 12 Honor.

11:06:56 13         THE COURT:  What I'm trying to understand is,

11:06:58 14 are you saying no e-mail discovery at all, or that you would

11:07:03 15 be willing after certain other discovery takes place,

11:07:09 16 interrogatories, requesting people with knowledge, document

11:07:12 17 production, that you would consider some requests for e-mail

11:07:17 18 discovery if plaintiff can show that it's relevant?

11:07:22 19         MR. DOWNING:  Absolutely, Your Honor.  And that

11:07:23 20 was addressed directly in our brief.  We're not saying that

11:07:27 21 e-mail discovery should never be contemplated in patent

11:07:31 22 infringement lawsuits.  We're just saying that we would like

11:07:34 23 to know what specific issue requires e-mail discovery.  Meet

11:07:40 24 and confer about that issue.  And then if there is a

11:07:44 25 dispute, there is a possibility that we could address that

| | |
|---|---|
| 11:07:47 | 1 |

issue through deposition discovery, through an interrogatory

response or some other mechanism.  But to the extent that

the parties are unable to reach an agreement, then we could

initiate the Court's procedures and address it then.  But

just allowing e-mail discovery on every issue in the case

including all of them that plaintiff has identified on

today's call is not consistent with Rule 26(b)(1).

THE COURT:  Okay.  Anything from HTC's counsel

that you want to add?

MR. RAWNSLEY:  No, Your Honor.

THE COURT:  Anything further from you,

Mr. Farnan?

MR. FARNAN:  Yes, Your Honor, just three quick

points.  Counsel for LG mentions that their proposal is not

radical.  As we noted in our papers, there is no case that

supports their proposal, not one.  We cited a case directly

that supports our position.  And it's important to note here

that their proposal is to get just our talking about e-mail

discovery after deposition which the practice in this

district that happens the last three, four weeks of

discovery.  They're essentially saying there is no shot for

e-mail discovery in this case.  And they brush aside the

default as if that's the starting point.  The default is not

the starting point for E discovery.  The default was

designed for situations like this, and the purpose to find a

11:09:23 1  balanced solution if parties disagree and the default itself

11:09:27 2  has numerous limits.  This is not a case where we're saying

11:09:30 3  we want unlimited E discovery, which is often the case prior

11:09:34 4  to the default standard.  The default limits the number of

11:09:36 5  custodians to ten and, in fact here we're only seeking five.

11:09:39 6  It limits the search terms of receiving party's request

11:09:42 7  which is only ten.  So there are limits already imposed in

11:09:46 8  the default and on us, so this is not going to be a train

11:09:49 9  off the track.  And so we submit, with their lack of showing

11:09:55 10  good cause, the default standard and the case law, that

11:09:58 11  their proposal should be rejected.

11:10:01 12          THE COURT:  Okay.

11:10:03 13          MR. DOWNING:  Your Honor, if I may respond.

11:10:05 14          THE COURT:  Sure.

11:10:05 15          MR. DOWNING:  Thank you, Your Honor.

11:10:06 16          So I would just like to quickly address the

11:10:09 17  issue of cases.  We respectfully disagree that we haven't

11:10:14 18  provided case law to support our position.  The *Sprint,*

11:10:20 19  *Grove Digital* and *Radium* cases, all of them limit

11:10:22 20  willfulness to specific issues, nontechnical issues.  The

11:10:29 21  *Grove Digital* case delays until the primary documents are

11:10:31 22  reviewed and require narrowly tailored searches for

11:10:36 23  secondary documents if needed.  And then the *Radium* case

11:10:40 24  addresses good cause and also requires specific issues.  The

11:10:43 25  two *Advanced Microscopy* cases that are referenced in

11:10:48  1    plaintiff's letter brief are cases related to the same

11:10:51  2    litigation campaign and they both involve willful

11:10:54  3    infringement allegations.

11:10:55  4         Your Honor, if I may, I would just like to

11:10:57  5    quickly address the plaintiff's argument that there is no

11:11:00  6    good cause in this case.  We don't agree that there is a

11:11:03  7    good cause standard or injury to negotiate the ESI order in

11:11:10  8    the case.  Even if good cause is required, we feel like we

11:11:14  9    have more than enough support in our letter brief to

11:11:18 10    restrict discovery in the way that we have proposed.  This

11:11:21 11    case is a patent infringement allegation on a spellcheck

11:11:24 12    feature on an accused mobile phone.  The enhanced damages

11:11:29 13    allegations were dropped from plaintiff's complaint in

11:11:32 14    response to LG's first motion to dismiss.  The patent

11:11:35 15    expired in February 16th, 2014, so this case is about past

11:11:39 16    damages from August 2012 to 2014.

11:11:43 17         Plaintiff's complaint concedes LG received

11:11:46 18    notice of infringement allegation in February 2016, years

11:11:49 19    after the patent expired and as we explained in our opening

11:11:53 20    letter brief today, LG is producing e-mails on core

11:11:57 21    technical documents.  Taking all of this in account, there

11:12:00 22    is more than sufficient good cause to support defendant's

11:12:03 23    proposed ESI provision and require good cause before, and a

11:12:10 24    meet and confer process before starting e-mail discovery.

11:12:17 25         THE COURT:  Okay.  Can you all give me a minute.

11:12:30 1  I just want to go back and look at something.

11:12:34 2              (A brief recess was taken.)

11:16:19 3              THE COURT:  Okay.  I think what I am going to do

11:16:29 4  is I'm going to deny the request for e-mail at this point.

11:16:32 5  I do agree with plaintiff that e-mail discovery is in the

11:16:35 6  ordinary course allowed in patent cases.  But I think that

11:16:39 7  this case presents some unique circumstances.  It involves

11:16:44 8  only direct infringement.  It involves expired patents with

11:16:47 9  a very limited damages period.  And here I think that the

11:16:52 10 burden and expense of wholesale e-mail discovery at the

11:16:56 11 outset seems to outweigh the benefits of conducting that

11:17:01 12 discovery.

11:17:02 13             Now, that being said if after some document

11:17:06 14 discovery and interrogatory responses it appears that some

11:17:09 15 more limited e-mail discovery is appropriate, I expect

11:17:12 16 parties to discuss the issue and come to an agreement.  And

11:17:15 17 at that point, plaintiff should be able to articulate the

11:17:18 18 specific issues that it wants e-mail on with particular

11:17:24 19 search terms.

11:17:26 20             Just to clarify, though, I take plaintiff's

11:17:30 21 point that if you're going to wait until after depositions

11:17:33 22 to discuss e-mail searches that that's going to be too late.

11:17:39 23 So I am not saying the discussions need to wait until after

11:17:42 24 depositions.  I think after some document discovery, after

11:17:48 25 some interrogatory responses, it should be clear whether or

11:17:52  1    not additional e-mail discovery is appropriate.  So I'll ask

11:17:58  2    the parties to work together and try and discuss that.

11:18:01  3                   Is there anything else that we need to address?

11:18:07  4                   MR. DOWNING:  Not from the defendants, Your

11:18:10  5    Honor.  Thank you.

11:18:15  6                   MR. WITTENZELLNER:  Not from defendant LG.

11:18:17  7                   MR. FARNAN:  Not from the plaintiff.

11:18:18  8                   THE COURT:  Thank you very much everyone.  I

11:18:22  9    hope you stay safe and I hope to see you in my courtroom

11:18:26 10    here very soon.

         11                   (Teleconference concluded at 11:18 a.m.)

         12

         13                   I hereby certify the foregoing is a true
               and accurate transcript from my stenographic notes in the
         14    proceeding.

         15
                                                 /s/ Dale C. Hawkins
         16                               Official Court Reporter
                                             U.S. District Court
         17

         18

         19

         20

         21

         22

         23

         24

         25

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GROOVE DIGITAL, INC.,                    )
                                         )
            Plaintiff,                   )
                                         )
       v.                                )   C.A. No. 18-836 (RGA)
                                         )
KING.COM LTD., KING.COM INC., and        )
KING.COM (US) LLC,                       )
                                         )
                                         )
            Defendants.                  )

## [PROPOSED] SCHEDULING ORDER

This **15** day of January, 2019, the Court having conducted an initial Rule 16(b)

scheduling conference pursuant to Local Rule 16.1(b), and the parties having determined after

discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation,

or binding arbitration;

IT IS ORDERED that:

1.      Rule 26(a)(1) Initial Disclosures. The parties shall make their initial disclosures

pursuant to Federal Rule of Civil Procedure 26(a)(1) on or before **January 29, 2019**.

2.      Joinder of Other Parties and Amendment of Pleadings. All motions to join other

parties, and to amend or supplement the pleadings, shall be filed on or before **July 9, 2019**,

except for a motion to amend pleadings to add an inequitable conduct defense, which shall be

filed on or before **January 28, 2020**.

3.      Discovery

        a.      Discovery Cut Off: All fact discovery in this case shall be initiated so that

it will be completed on or before **April 27, 2020**.

        b.      Document Production. Document production shall be substantially

complete by **December 27, 2019**.

      c.      <u>Requests for Admission</u>. A maximum of **50 requests for admission** are permitted for each side. In addition, the parties may serve up to 50 requests for admission to establish the authenticity of documents. Requests for admission directed to document authentication shall be clearly denoted as such, and shall be served separately from requests for admission subject to the numerical limitations stated above. The parties will work to agree on authentication where possible. Parties may serve additional requests for admission directed to document authentication only upon agreement of the other side or by leave of the Court.

      d.      <u>Interrogatories</u>. A maximum of **25 interrogatories**, including contention interrogatories, are permitted for each side.

      e.      <u>Depositions</u>.

      i.      <u>Limitation on Hours for Deposition Discovery.</u> Each side is limited to taking a total of 70 hours of testimony by deposition upon oral examination, including depositions of third parties (other than experts), with a limit of seven (7) hours per witness. For expert deposition discovery, each side shall be entitled to a separate deposition for each Rule 26(a)(2)(B) opening or rebuttal report submitted by an expert. If a party believes that additional hours for deposition discovery are necessary, the parties shall meet and confer and try to reach agreement on the amount of additional hours needed, and thereafter, if unable to reach agreement, the parties may seek modification of this provision by submission to the Court.

      ii.      <u>Location of Depositions</u>. Any party or representative (officer, director, or managing agent) of a party filing a civil action in this district court must ordinarily be required, upon request, to submit to a deposition at a place designated within this district. Exceptions to this general rule may be made by order of the Court or by

agreement of the parties. A defendant who becomes a counterclaimant, cross-claimant, or third-party plaintiff shall be considered as having filed an action in this Court for the purpose of this provision. Because the Defendants in this action have not filed counterclaims, depositions of their witnesses shall be taken at a location convenient to such witnesses.

   f. <u>E-Service</u>. The parties consent to electronic service, and agree that such service of papers may be accomplished by electronic mail, with the same result as if such papers had been delivered in person.

   g. <u>Disclosures</u>. Absent agreement of the parties, or approval of the Court:

   i. <u>Electronically Stored Information (ESI)</u>. Except as modified below, the parties agree to comply with the Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

   (a) On or before **February 28, 2019**, the parties shall make their disclosures pursuant to paragraph 3(a) of the Default Standard of Discovery, Including Discovery of Electronically Stored Information (the "Default Standard").

   (b) If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party on or before **August 23, 2019**.

   (c) The parties will delay search and production of electronic mail and electronic mail documentation ("Secondary Documents"). If, at such time as the receiving party has reviewed the contents of the producing party's primary document production, the receiving party determines that Secondary Documents may be required, the receiving party may indicate such determination to the producing party. Upon such determination, the producing

party and receiving party shall meet and confer in good faith to identify which particular documents will be searched and to identify reasonable mechanisms for narrowly tailored searches of, or for, such Secondary Documents.  Should the parties be unable to reach an agreement on these issues, counsel must follow the provisions of Paragraph 3(h) below.

        ii.    On or before **February 19, 2019**, the Plaintiff shall produce to Defendant the disclosures and documents required under paragraph 4(a) of the Delaware Default Standard, which shall include identification of the specific "push notifications that display content by opening a notification window in a predesignated location on the game player's device" that are accused of infringing the '762 patent (the "Accused Functionality"), as stated in paragraph 19 of Plaintiff's complaint. (D.I. 1, ¶19).

        iii.    On or before **March 21, 2019**, the Defendant shall produce to Plaintiff the documents required under paragraph 4(b) of the Delaware Default Standard.  The documents produced shall be limited to those relating to the Accused Functionality identified in Plaintiff's paragraph 4(a) disclosures.

        iv.    On or before **April 19, 2019**, the Plaintiff shall produce to the Defendant the documents and disclosures required under paragraph 4(c) of the Delaware Default Standard.

        v.    On or before **May 20, 2019**, the Defendant shall produce to Plaintiff the documents and disclosures required under paragraph 4(d) of the Delaware Default Standard.

        h.    <u>Discovery Matters and Disputes Relating to Protective Orders</u>.  Should counsel find they are unable to resolve a discovery matter or a dispute relating to a protective order, the parties involved in the discovery matter or protective order dispute shall contact the

Court's Case Manager to schedule an in-person conference/argument. Unless otherwise ordered, by no later than forty-eight hours prior to the conference/argument, the party seeking relief shall file with the Court a letter, not to exceed three pages, outlining the issues in dispute and its position on those issues. By no later than twenty-four hours prior to the conference/argument, any party opposing the application for relief may file a letter, not to exceed three pages, outlining that party's reasons for its opposition. Should any document(s) be filed under seal, a courtesy copy of the sealed document(s) must be provided to the Court within one hour of e-filing the document(s).

If a discovery-related motion is filed without leave of the Court, it will be denied without prejudice to the moving party's right to bring the dispute to the Court through the discovery matters procedures set forth in this Order.

4.     Application to Court for Protective Order. Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, counsel should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court on or before **February 19, 2019**. Should counsel be unable to reach an agreement on a proposed form of order, counsel must follow the provisions of Paragraph 3(h) above.

Any proposed protective order must include the following paragraph:

> Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

5.      <u>Papers Filed Under Seal</u>. When filing papers under seal, counsel shall deliver to the Clerk an original and one copy of the papers. A redacted version of any sealed document shall be filed electronically within seven days of the filing of the sealed document.

6.      <u>Courtesy Copies</u>. The parties shall provide to the Court two courtesy copies of all briefs and one courtesy copy of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.). This provision also applies to papers filed under seal.

7.      <u>Claim Construction Issue Identification</u>. On or before **October 16, 2019**, the parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction and by **October 30, 2019**, the parties shall exchange their proposed claim construction of those term(s)/phrase(s). These documents will not be filed with the Court. Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be filed no later than **November 13, 2019**, The Joint Claim Construction Chart, in Word or WordPerfect format, shall be e-mailed simultaneously with filing to rga_civil@ded.uscourts.gov. The parties' Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s) in issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions. A copy of the patent(s) in issue as well as those portions of the intrinsic record relied upon shall be submitted with this Joint Claim Construction Chart. In this joint submission, the parties shall not provide argument.

8.      <u>Claim Construction Briefing</u>. The Plaintiff shall serve, but not file, its opening brief, not to exceed 20 pages, on **January 7, 2020**. The Defendant shall serve, but not file, its answering brief, not to exceed 30 pages, on **February 4, 2020**. The Plaintiff shall serve, but not

file, its reply brief, not to exceed 20 pages, on **February 18, 2020**. The Defendant shall serve, but not file, its sur-reply brief, not to exceed 10 pages, on **March 3, 2020**. No later than **March 13, 2020**, the parties shall file a Joint Claim Construction Brief. The parties shall copy and paste their unfiled briefs into one brief, with their positions on each claim term in sequential order, in substantially the form below.

## JOINT CLAIM CONSTRUCTION BRIEF

I.      Agreed-upon Constructions

II.     Disputed Constructions

      A.     [TERM 1]
          1.     Plaintiff's Opening Position
          2.     Defendant's Answering Position
          3.     Plaintiffs Reply Position
          4.     Defendant's Sur-Reply Position

      B.     [TERM 2]
          1.     Plaintiff's Opening Position
          2.     Defendant's Answering Position
          3.     Plaintiffs Reply Position
          4.     Defendant's Sur-Reply Position

Etc. The parties need not include any general summaries of the law relating to claim construction.  If there are any materials that would be submitted in an appendix, the parties shall submit them in a Joint Appendix.

      9.     Hearing on Claim Construction. Beginning at **9:00 a.m.** on **April 9, 2020**, the Court will hear argument on claim construction. Absent prior approval of the Court (which, if it is sought, must be done so by joint letter submission no later than the date on which answering claim construction briefs are due), the parties shall not present testimony at the argument, and the argument shall not exceed a total of three hours.

10.      Disclosure of Expert Testimony.

a.      Expert Reports. For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before **September 14, 2010**. The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before **October 14, 2020**. Reply expert reports from the party with the initial burden of proof are due on or before **November 4, 2020**. No other expert reports will be permitted without either the consent of all parties or leave of the Court. Along with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition. Depositions of experts shall be completed on or before **December 16, 2020**.

b.      Objections to Expert Testimony. To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court.

11.      Case Dispositive Motions. All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before **February 3, 2021**. Response briefs shall be due on or before **March 3, 2021**. Reply briefs shall be due on or before **March 31, 2021**. No case dispositive motion under Rule 56 may be filed more than ten days before the above date without leave of the Court.

12.      Applications by Motion. Except as otherwise specified herein, any application to the Court shall be by written motion. Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

13.     Pretrial Conference. On **August 20, 2021**, the Court will hold a Rule 16(e) final pretrial conference in Court with counsel beginning at **9:00 a.m.** The parties shall file a joint proposed final pretrial order in compliance with Local Rule 16.3(c) no later than 5 p.m. on the third business day before the date of the final pretrial conference. Unless otherwise ordered by the Court, the parties shall comply with the timeframes set forth in Local Rule 16.3(d) for the preparation of the proposed joint final pretrial order.

14.     Motions *in Limine*. Motions *in limine* shall not be separately filed. All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order. Each party shall be limited to three *in limine* requests, unless otherwise permitted by the Court. The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three pages of argument and may be opposed by a maximum of three pages of argument, and the party making the *in limine* request may add a maximum of one additional page in reply in support of its request. If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three page submission (and, if the moving party, a single one page reply). No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

15.     Jury Instructions, Voir Dire, and Special Verdict Forms. Where a case is to be tried to a jury, pursuant to Local Rules 47.1(a)(2) and 51.1, the parties should file (i) proposed voir dire, (ii) preliminary jury instructions, (iii) final jury instructions, and (iv) special verdict forms no later than 5 p.m. on the third business day before the date of the final pretrial conference. The parties shall submit simultaneously with filing each of the foregoing four documents in Word or WordPerfect format to rga_civil@ded.uscourts.gov.

16. <u>Trial</u>. This matter is scheduled for a **five-day** jury trial beginning at 9:30 a.m. on **September 13, 2021,** with the subsequent trial days beginning at 9:30 a.m. Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m. The trial will be timed, as counsel will be allocated a total number of hours in which to present their respective cases.

17. <u>ADR Process</u>. This matter is referred to a magistrate judge to explore the possibility of alternative dispute resolution.

UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CÉSAR CASTILLO, INC., <br><br><br> Plaintiff, <br><br> v. <br><br> AMGEN INC., TEVA PHARMACEUTICALS USA, INC., TEVA PHARMACEUTICALS INDUSTRIES LTD., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ACTAVIS PHARMA, INC. and ACTAVIS PLC, <br><br> Defendants. | Civil Action No. 1:19-cv-00396-LPS |

## STIPULATION AND [PROPOSED] SCHEDULING ORDER REGARDING FILING OF AMENDED COMPLAINT, RESPONSES THERETO, AND PHASED DISCOVERY

Plaintiff César Castillo, Inc., on behalf of itself and all others similarly situated

("Plaintiff"), and Defendants Amgen Inc. ("Amgen"), Teva Pharmaceuticals USA, Inc., Watson

Laboratories, Inc., and Actavis Pharma, Inc. (collectively, "Teva," and together with Amgen, the

"Defendants") hereby stipulate and agree (the "Stipulation") as follows:[1]

1.      Plaintiff will file its amended complaint no later than July 22, 2019.  Defendants

will file their contemplated motion to dismiss on September 16, 2019.  Plaintiff will file any

opposition to Defendants' motion to dismiss within 45 days thereof, and Defendants will file any

reply within 30 days of Plaintiff's opposition.

---

[1] Following several meet-and-confers among Plaintiff and Defendants, the parties agreed that proceeding with the two-phase discovery plan detailed in this Stipulation will result in moving the case forward while Defendants' anticipated motions to dismiss are pending. The parties are cognizant that the Court's Order of April 25, 2019 (D.I. 31) requires the submission of a "proposed scheduling order(s) (consistent with Judge Stark's form scheduling order)" no later than June 10, 2019. The parties respectfully suggest that, in light of their detailed agreement as to the short term, the efficient progress of the case would be better served by establishing a long-term schedule for the case only after the Court rules on the anticipated motions to dismiss.

2.    Discovery shall proceed in two phases.  Phase I will involve the production by Defendants of materials that are readily accessible without a custodial-based or electronic search. Phase II will involve a custodial search if necessary and production by Plaintiff and Defendants (collectively, the "Parties").

3.    *Phase I.*  Within 15 days after this Stipulation is filed with the Court, Defendants shall complete production of the first four categories of documents requested by Plaintiff's Amended and Superseding First Set of Requests for Production of Documents Directed to Defendants, served by email on May 24, 2019 (the "Requests").  In addition, within 15 days Defendants shall complete production of the fifth category of documents in the Requests, except that Request shall be modified to read: "The Amgen-Teva Agreement and any related agreement or other agreement between Amgen and Teva executed contemporaneously with the Amgen-Teva Agreement."  Also within 15 days, Defendants shall produce quarterly revenue regarding Sensipar®.  Within 30 days after this Stipulation is filed with the Court, Defendants shall produce quarterly unit sales data for Sensipar®.  Defendants will produce documents in response to the sixth Request pursuant to the process laid out in paragraphs 7 and 8 below.  The Parties shall promptly meet and confer regarding any additional documents requested by Plaintiff in Phase I, including regarding Plaintiff's request for rebate data and additional sales and revenue data.

4.    Within two days after this Stipulation is filed with the Court, Defendants shall deliver the following to all plaintiffs in *Cipla Ltd. v. Amgen Inc.*, No. 19-cv-00044-LPS (D. Del.) (the "*Cipla* Plaintiffs") with which Amgen entered a Stipulated Protective Order in that litigation (the "*Cipla* Protective Order"):

    a.    a copy of this Stipulation, as recorded on the Court's docket;

    b.    a copy of the Requests; and

    c.    notice of Defendants' intention to comply with the Requests.

5.     To the extent the *Cipla* Plaintiffs notify Defendants that they object to the production of materials pursuant to paragraph 3 of this Stipulation that constitute the *Cipla* Plaintiffs' Designated Information as set forth in the *Cipla* Protective Order ("*Cipla* Designated Information"), Amgen agrees to expeditiously cooperate with Plaintiff to raise the issue with the Court.  Amgen further agrees that any such objection does not modify or delay its obligation as set forth in paragraph 3 to complete production of documents other than *Cipla* Designated Information.

6.     During Phase I, the Parties stipulate to negotiate in good faith over the scope of additional productions of documents by Defendants that can be readily accessed without a custodial search and without unreasonable expense, such as contracts, settlement agreements, or similar materials.  Any disputes over the scope of said production may be raised with the Court in accordance with the Court's discovery dispute resolution procedures.  No depositions or other forms of written discovery (e.g., interrogatories or requests for admission), or third-party discovery (other than from generic manufacturers that have submitted ANDAs for a generic equivalent of Sensipar®), shall take place during Phase I.

7.     Within two days after this Stipulation is filed with the Court, Defendants shall deliver the following to all defendants in *Amgen Inc. v. Amneal Pharmaceuticals*, No. 16-cv-00853 (D. Del.) with which Amgen entered a settlement agreement in that litigation (the "*Amneal* Defendants"):

   a.     a copy of this Stipulation, as recorded on the Court's docket;

   b.     a copy of the Requests; and

   c.     notice of Defendants' intention to comply with the Requests.

8.     Within 15 days, Amgen will produce any settlement agreement entered with any *Amneal* Defendant who does not object to the production of materials referenced in the Requests.

3

The disclosure of any such settlement agreements will be limited to Outside Counsel Only. To the extent any *Amneal* Defendant notifies Amgen that it objects to disclosure of an agreement entered with that *Amneal* Defendant, Amgen agrees to expeditiously cooperate with Plaintiff to raise the issue with the Court.

9. *Phase II.* Within 30 days of the Court's decision on Defendants' contemplated motions to dismiss the Consolidated Amended Complaints, in the event that claims are remaining in the case, the parties will meet and confer to discuss the production of documents pursuant to Phase II and a schedule for depositions, other written discovery, and other third-party discovery.

10. The parties shall use their best efforts during Phase I to prepare for the prompt commencement of discovery under Phase II after the Court's decision on a motion to dismiss. This shall include the service of document requests, and negotiations during Phase I over a protective order, e-discovery protocol, and potential search terms and custodians for use during Phase II. Notwithstanding the foregoing, Defendants shall not be required to actually collect, process, or query any electronically stored information until the commencement of Phase II, except as specifically provided in paragraph 3 above.

11. After the commencement of Phase II, the parties shall promptly submit to the Court a proposed comprehensive case schedule and Rule 16 Scheduling Order that will govern the remainder of this action. The parties shall submit any dispute to the Court under the Court's applicable rules.

STIPULATED and AGREED to this 6th day of June, 2019:

_/s/ Tiffany J. Cramer_
Robert J. Kriner, Jr. (Del. Bar No. 2546)
Tiffany J. Cramer (Del. Bar No. 4998)
Vera G. Belger (Del Bar No. 5676)
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
2711 Centerville Road Suite 201
Wilmington, DE 19808
(302) 656-2500
rjk@chimicles.com
tjc@chimicles.com

Linda P. Nussbaum
Bart D. Cohen
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036
(917) 438-9189
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com

Thomas M. Sobol
Bradley J. Vettraino
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
(617) 482-3700
tom@hbsslaw.com
bradleyv@hbsslaw.com

Sharon K. Robertson
Donna M. Evans
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
srobertson@cohenmilstein.com
devans@cohenmilstein.com

John Radice
Daniel Rubenstein
Kenneth Pickle
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540

_/s/ Brian P. Egan_
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
**MORRIS, NICHOLS, ARSHT & TUNNELL
LLP**
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

Eric J. Stock
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
estock@gibsondunn.com

M. Sean Royall
Ashley E. Johnson
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 571-2900
sroyall@gibsondunn.com
ajohnson@gibsondunn.com

*Attorneys for Defendant Amgen, Inc.*

_/s/ Karen E. Keller_
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
**SHAW KELLER LLP**
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801

(646) 245-8502
jradice@radicelawfirm.com
drubenstein@radicelawfirm.com
kpickle@radicelawfirm.com

Shawn Raymond
SUSMAN GODFREY LLP
1000 Louisiana
Suite 5100
Houston, TX 77002
(713) 653-7817
sraymond@susmangodfrey.com

Kalpana Srinivasan
SUSMAN GODFREY LLP
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 789-3106
ksrinivasan@susmangodfrey.com

Michael M. Buchman
Michelle C. Clerkin
MOTLEY RICE LLC
777 Third Avenue, 27th Floor
New York, NY 10017
(212) 577-0050
mbuchman@motleyrice.com
mclerkin@motleyrice.com

Jayne A. Goldstein
SHEPHERD FINKELMAN MILLER
  & SHAH LLP
1625 N. Commerce Parkway
Suite 320
Ft. Lauderdale, FL 33326
(954) 515-0123
jgoldstein@sfmslaw.com

*Counsel for Plaintiff César Castillo, Inc.*

(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com

Henninger S. Bullock
Karen W. Lin
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY  10020
(212) 506-2500
hbullock@mayerbrown.com
klin@mayerbrown.com

*Attorneys for Defendant Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., and Actavis Pharma, Inc.*

IT IS SO ORDERED, this _____ day of June, 2019

_____
The Honorable Leonard P. Stark

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-189 (LPS) (CJB) |
| | ) | |
| MESO SCALE DIAGNOSTICS, LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| MESO SCALE DIAGNOSTICS, LLC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCHE DIAGNOSTICS CORPORATION | ) | |
| and BIOVERIS CORPORATION, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**SCHEDULING ORDER**

This 31st day of July, 2017, the Court having conducted a Case Management

Conference/Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(a) and

Judge Stark's Revised Procedures for Managing Patent Cases (which is posted at

http://www.ded.uscourts.gov; see Chambers, Judge Leonard P. Stark, Patent Cases) on July 24,

2017, and the parties having determined after discussion that the matter cannot be resolved at

this juncture by settlement, voluntary mediation, or binding arbitration;

IT IS HEREBY ORDERED that:

1.    Rule 26(a)(l) Initial Disclosures and E-Discovery Default Standard.  The parties

agree that they will make their initial disclosures pursuant to Federal Rule of Civil Procedure

26(a)(1) within thirty (30) days after the date of the Rule 16 scheduling conference.  At that time,

the parties will also exchange the information set forth in section 3 of the Court's Default

Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"). If

they have not already done so, the parties are to review the Court's Default Standard for

Discovery, Including Discovery of Electronically Stored Information ("ESI") (which is posted at

http://www.ded.uscourts.gov; see Other Resources, Default Standards for Discovery, and is

incorporated herein by reference). The parties agree to meet and confer regarding any revisions

to the Default Standards.

2.      Joinder of Other Parties and Amendment of Pleadings.  All motions to join

other parties, and to amend or supplement the pleadings, shall be filed on or before **January**

**12, 2018**.

3.      Application to Court for Protective Order.  Should counsel find it will be

necessary to apply to the Court for a protective order specifying terms and conditions for the

disclosure of confidential information, counsel should confer and attempt to reach an

agreement on a proposed form of order and submit it to the Court within **ten (10) days from**

**the date of this Order**.  Should counsel be unable to reach an agreement on a proposed form

of order, counsel must follow the provisions of Paragraph 9(g) below.

Any proposed protective order must include the following paragraph:

> Other Proceedings.  By entering this order and limiting the
> disclosure of information in this case, the Court does not intend
> to preclude another court from finding that information may be
> relevant and subject to disclosure in another case. Any person or
> party subject to this order who becomes subject to a motion to
> disclose another party's information designated "confidential"
> [the parties should list any other level of designation, such as
> "highly confidential," which may be provided for in the protective
> order] pursuant to this order shall promptly notify that party of the
> motion so that the party may have an opportunity to appear and
> be heard on whether that information should be disclosed.

4.      Papers Filed Under Seal.  In accordance with section G of the Administrative

Procedures Governing Filing and Service by Electronic Means, a redacted version of any

2

sealed document shall be filed electronically within seven (7) days of the filing of the sealed document.

Should any party intend to request to seal or redact all or any portion of a transcript of a court proceeding (including a teleconference), such party should expressly note that intent at the start of the court proceeding. Should the party subsequently choose to make a request for sealing or redaction, it must, promptly after the completion of the transcript, file with the Court a motion for sealing/redaction, and include as attachments (1) a copy of the complete transcript highlighted so the Court can easily identify and read the text proposed to be sealed/redacted, and (2) a copy of the proposed redacted/sealed transcript. With their request, the party seeking redactions must demonstrate why there is good cause for the redactions and why disclosure of the redacted material would work a clearly defined and serious injury to the party seeking redaction.

5. _Courtesy Copies_. Other than with respect to "discovery matters," which are governed by paragraph 8(g), and the final pretrial order, which is governed by paragraph 19, the parties shall provide to the Court two (2) courtesy copies of all briefs and one (1) courtesy copy of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.). This provision also applies to papers filed under seal.

6. _ADR Process_. This matter is referred to a magistrate judge to explore the possibility of alternative dispute resolution.

7. _Service by Electronic Means_: The parties hereby consent to accept service of all documents in this case by electronic means pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).

3

8.     Disclosures.  Absent agreement among the parties, and approval of the Court:

a.     By **August 15, 2017**, Defendant and Counter-Plaintiff Meso Scale Diagnostics, LLC ("Meso Scale") shall identify the accused product(s), including accused methods and systems, and its damages model, as well as the asserted patent(s) that the accused product(s) allegedly infringe(s).  Meso Scale shall also identify the provision(s), and the specific clauses thereof, of Section 2 of the 1995 IGEN/MSD License Agreement (as amended) that Meso Scale contends form the basis for the license rights to the patents which Meso Scale asserts are being infringed.

b.     By **September 15, 2017**, Plaintiff and Counter-Defendants Roche Diagnostics Corporation and BioVeris Corporation (collectively, "Roche"), shall produce core technical documents related to the accused product(s), sufficient to show how the accused product(s) work(s), including but not limited to non-publicly available operation manuals, product literature, general schematics, and specifications.  Roche shall also identify and produce all other licenses of the asserted patents.

c.     By **November 15, 2017**, Meso Scale shall produce an initial claim chart relating each known accused product to the asserted claims each such product allegedly infringes.  Meso Scale's claim chart shall identify each product or process developed in the course of the Research Program or utilizing or related to the Research Technologies Meso Scale contends the accused product(s) allegedly incorporate, use or otherwise rely upon in violation of Meso Scale's license rights.  Meso Scale shall also produce documents related to the Research Programs and Research Technologies, sufficient to show what the Research Programs and Research Technologies are, including but not limited to non-publicly available operation manuals, literature, lab notebooks, reports, and specifications.

4

      d.    By **December 15, 2017**, Roche will disclose whether it intends to assert any invalidity defense, including which claims are asserted to be invalid.  If Roche intends to assert any invalidity defense, Roche shall also produce on this date its initial invalidity contentions for each asserted claim, as well as the known related invalidating references.

      e.    By **September 21, 2018**, Meso Scale shall provide its final infringement contentions, including a claim chart in the form required by paragraph 8(c).

      f.    If Roche discloses an invalidity defense pursuant to paragraph 8(d), then by **October 19, 2018**, Roche shall provide final invalidity contentions.

    9.    <u>Discovery</u>.   Unless otherwise ordered by the Court, the limitations on discovery set forth in Local Rule 26.1 shall be strictly observed.  The parties intend to accelerate discovery on the scope of Meso Scale's license rights.  Accordingly, there shall be two tracks of discovery as follows:

      a.    <u>Discovery Track 1</u>.  Discovery Track 1 shall encompass all discovery relating to (1) the scope of Meso Scale's exclusive license rights under the 1995 IGEN/MSD License Agreement (as amended); and (2) functional and technological aspects of the accused products, including but not limited to how those products work and can be used by customers.  Track 1 does not include discovery on the number of instances of alleged infringement, sales and marketing related to alleged infringement or damages.  Except as within this scope, all other discovery shall be postponed until Track 2.

        i.    <u>Discovery Track 1</u>.  The intent of Track 1 discovery is to accelerate all discovery relevant to potential dispositive motions brought pursuant to paragraph 9(a)(iv) below.  Absent a showing of good cause, a party

opposing a dispositive motion under paragraph 9(a)(iv) shall not request more time for discovery pursuant to Fed. R. Civ. P. 56(d) with respect to such dispositive motions. The parties recognize that some individuals may have information relevant to issues that are the subjects of both Track 1 and Track 2 discovery. If the parties agree or, absent agreement, the Court orders that an individual be deposed more than once, the topics addressed during each deposition will be limited to the issues relevant to the then-applicable Track of discovery, subject to further agreement by the parties or further order of the Court.

ii.   Meet and Confer.  On or before **January 15, 2018**, the parties shall conduct a meet and confer session to discuss whether either party plans to file a dispositive motion pursuant to paragraph 9(a)(iv) below and, if so, whether the parties intend to offer expert testimony. In the event that the parties agree that neither intends to file a dispositive motion and/or to rely on expert testimony, the parties shall attempt to agree on an amended schedule that moves up the deadlines for the remainder of the case. If a party elects not to bring a dispositive motion under paragraph 9(a)(iv) below, that party is precluded from bringing any pre-trial dispositive motion that raises such issues at any later point in the case.

iii.   Phase 1 Expert Reports.  Any party that elects to bring a dispositive motion pursuant to paragraph 9(a)(iv) shall make its initial Federal

6

Rule 26(a)(2) disclosure of expert testimony with respect to the definition and/or scope of Meso Scale's license rights on or before **March 1, 2018**. Any party responding to such a dispositive motion shall make its Federal Rule 26(a)(2) disclosure of expert testimony to contradict or rebut evidence on the same matter identified by the other party on or before **April 2, 2018**. Reply expert disclosures from any party making such a dispositive motion shall be due on or before **April 16, 2018**. All expert depositions with respect to the issues in Phase 1 shall be completed by **May 1, 2018.**

iv. <u>Dispositive Motions Related to Meso Scale's License Rights</u>. In the event any party chooses to make a motion in Track 1 to dispose of all or part of the case based solely upon the definition and/or scope of Meso Scale's license rights, any such motion (including an opening brief limited to 20 pages and affidavits, if any, in support of the motion) shall be served and filed on or before **May 15, 2018**. Response briefs (limited to 20 pages) and affidavits, if any, in opposition to the motions shall be served and filed on or before **June 15, 2018**. Reply briefs (limited to 15 pages) in support of the motion shall be served and filed on or before **July 13, 2018**. The Court will hear argument on any such motion on **[Date TBD Per Judge Stark's Calendar]**. Subject to further order of the Court, each side will be allocated a total of forty-five (45) minutes to present its argument on any such motion.

7

b.     <u>Discovery Track 2</u>. Discovery Track 2 shall include all discovery not encompassed by Discovery Track 1, including but not limited to all discovery on liability issues and all discovery related to damages.

i.     <u>Start of Track 2 Discovery</u>. The parties may exchange initial written discovery requests on Track 2 issues beginning **March 15, 2018**. To the extent that document requests and other written discovery are relevant to both Track 1 and Track 2, a party may not withhold responses in Track 1 on the basis that the discovery is also relevant to Track 2.

ii.     <u>Discovery Track 2 Cutoff</u>. All other discovery in Discovery Track 2 may commence on **July 16, 2018**, and all fact discovery shall be completed on or before **December 14, 2018**.

iii.     <u>Discovery Track 2 Document Production</u>. Document production in Discovery Track 2 shall be substantially complete by **August 1, 2018**.

c.     <u>Requests for Admission</u>. A maximum of 50 requests for admission are permitted for each side.

d.     <u>Interrogatories</u>.

i.     A maximum of 40 interrogatories, including contention interrogatories, are permitted for each side.

ii.     The Court encourages the parties to serve and respond to contention interrogatories early in the case. In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof. The adequacy of all interrogatory answers shall

8

be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

e.     Depositions.

     i.     Limitation on Hours for Deposition Discovery. Each side is limited to a total of 100 hours of taking testimony by deposition upon oral examination of fact witnesses and third-party witnesses. Expert depositions shall not count toward the 100 hour limit.

     ii.     Location of Depositions. Unless the parties agree otherwise, the location of the deposition of any party pursuant to Federal Rule 30(b)(6) shall be held at a place within this district; the depositions of all individual employees and representatives of each party (including officers, directors, and managing agents) shall be held at a place not more than 50 miles from the location of the individual's residence or regular workplace. Exceptions to these general rules may be made by order of the Court.

f.     Disclosure of Expert Testimony on Liability and Damages.

     i.     Expert Reports.     For the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before **January 15, 2019**. The supplemental disclosure to contradict or rebut evidence on the same matter identified by another party is due on or before **March 1, 2019**. Reply expert reports from the party with the initial burden of proof are due on or before **April 1, 2019**. Except as provided in paragraph 9(a)(iii) above, no other expert reports will be permitted without either the consent of all parties or leave of the Court. Along

9

with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition. Expert depositions shall be completed by **April 22, 2019**.

       ii.     Expert Report Supplementation.  The parties agree they will permit expert declarations to be filed in connection with motions briefing (including case-dispositive motions), provided that such declarations shall not include any new theories or materials that are not already included in the expert disclosures.

       iii.    Objections to Expert Testimony.  To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court. Briefing on such motions is subject to the page limits set out in connection with briefing of case dispositive motions.

g.     Discovery Matters and Disputes Relating to Protective Orders.

       i.     Any discovery motion filed without first complying with the following procedures will be denied without prejudice to renew pursuant to these procedures.

       ii.    Should counsel find, after good faith efforts including ***verbal*** communication among Delaware and Lead Counsel for all parties to the dispute -that they are unable to resolve a discovery matter or a dispute relating

to a protective order, the parties involved in the discovery matter or protective

order dispute shall submit a joint letter in substantially the following form:

Dear Judge Stark:

The parties in the above- referenced matter write to request the
scheduling of a discovery teleconference.

The following attorneys, including at least one Delaware Counsel
and at least one Lead Counsel per party, participated in a verbal
meet-and-confer (in person and/or by telephone) on the following
date(s):

_____

Delaware Counsel: _____

Lead Counsel: _____

The disputes requiring judicial attention are listed below:

[provide here a non-argumentative list of disputes requiring
judicial attention]

    iii.    On a date to be set by separate order, generally not less than

forty- eight (48) hours prior to the conference, the party seeking relief shall file

with the Court a letter, not to exceed three (3) pages, outlining the issues in

dispute and its position on those issues.  On a date to be set by separate order,

but generally not less than twenty-four (24) hours prior to the conference, any

party opposing the application for relief may file a letter, not to exceed three (3)

pages, outlining that party's reasons for its opposition.

    iv.    Each party shall submit two (2) courtesy copies of its discovery

letter and any attachments.

    v.    Should the Court find further briefing necessary upon conclusion of

the telephone conference, the Court will order it.   Alternatively, the Court may

11

choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference.

10.  Motions to Amend.

a.      Any motion to amend (including a motion for leave to amend) a pleading shall *NOT* be accompanied by an opening brief but shall, instead, be accompanied by a letter, not to exceed three (3) pages, describing the basis for the requested relief, and shall attach the proposed amended pleading as well as a "blackline" comparison to the prior pleading.

b.      Within seven (7) days after the filing of a motion in compliance with this Order, any party opposing such a motion shall file a responsive letter, not to exceed five (5) pages.

c.      Within three (3) days thereafter, the moving party may file a reply letter, not to exceed two (2) pages, and, by this same date, the parties shall file a letter requesting a teleconference to address the motion to amend.

11.  Motions to Strike.

a.      Any motion to strike any pleading or other document shall *NOT* be accompanied by an opening brief but shall, instead, be accompanied by a letter, not to exceed three (3) pages, describing the basis for the requested relief, and shall attach the document to be stricken.

b.      Within seven (7) days after the filing of a motion in compliance with this Order, any party opposing such a motion shall file a responsive letter, not to exceed five (5) pages.

12

   c.   Within three (3) days thereafter, the moving party may file a reply letter, not to exceed two (2) pages, and, by this same date, the parties shall file a letter requesting a teleconference to address the motion to strike.

   12.   Tutorial Describing the Technology and Matters in Issue. Unless otherwise ordered by the Court, the parties shall provide the Court, no later than the date on which their opening claim construction briefs are due, a tutorial on the technology at issue. In that regard, the parties may separately or jointly submit a DVD of not more than thirty (30) minutes. The tutorial should focus on the technology in issue and should not be used for argument. The parties may choose to file their tutorial(s) under seal, subject to any protective order in effect. Each party may comment, in writing (in no more than five (5) pages) on the opposing party's tutorial. Any such comment shall be filed no later than the date on which the answering claim construction briefs are due. As to the format selected, the parties should confirm the Court's technical abilities to access the information contained in the tutorial (currently best are "mpeg" or "QuickTime").

   13.   Claim Construction Issue Identification. On **March 23, 2018**, the parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction and their proposed claim construction of those term(s)/phrase(s). This document will not be filed with the Court. Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be submitted on **April 16, 2018**. The parties' Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s) in issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions. A copy of the patent(s) in issue as well as those portions of the

13

intrinsic record relied upon shall be submitted with this Joint Claim Construction Chart. In this joint submission, the parties shall not provide argument.

14.     Claim Construction Briefing.  The parties shall contemporaneously submit initial briefs on claim construction issues on **May 2, 2018**.  The parties' answering/ responsive briefs shall be contemporaneously submitted on **June 1, 2018**.  No reply briefs or supplemental papers on claim construction shall be submitted without leave of the Court.  Local Rule 7.1.3(4) shall control the page limitations for initial (opening) and responsive (answering) briefs.

15.     Hearing on Claim Construction.  Beginning at **9:00 a.m.** on **July 2, 2018**, the Court will hear argument on claim construction.  The parties shall notify the Court, by joint letter submission, no later than the date on which their answering claim construction briefs are due: (i) whether they request leave to present testimony at the hearing; and (ii) the amount of time they are requesting be allocated to them for the hearing.

Provided that the parties comply with all portions of this Scheduling Order, and any other orders of the Court, the parties should anticipate that the Court will issue its claim construction order within sixty (60) days of the conclusion of the claim construction hearing.  If the Court is unable to meet this goal, it will advise the parties no later than sixty (60) days after the conclusion of the claim construction hearing.

16.     Interim Status Report.  On **January 31, 2018** counsel shall submit a joint letter to the Court with an interim report on the nature of the matters in issue and the progress of discovery to date.  That joint letter shall inform the court whether Track 1 expert reports and dispositive motions are planned and, if not, what adjustments to the schedule the parties propose.

14

The Court will convene a status conference on **[Date TBD—after status report]** to discuss alternative dispute resolution.

17.     <u>Supplementation</u>.   Absent agreement among the parties, and approval of the Court, no later than **September 7, 2018**, Meso Scale must finally supplement, *inter alia,* the identification of all accused products.

18.     <u>Case Dispositive Motions</u>.   All case dispositive motions and *Daubert* motions (other than any motion a party elects to file under Paragraph 9(a) of this Order), an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before **May 7, 2019**. Responses will be due by **June 7, 2019**, and replies will be due by **June 28, 2019**.   Briefing will be presented pursuant to the Court's Local Rules, as modified by this Order.

a.     <u>No early motions without leave</u>.   No case dispositive motion under Rule 56 may be filed more than ten (10) days before the above dates without leave of the Court.

b.     <u>Page limits combined with Daubert motion page limits</u>.   Each party is permitted to file as many case dispositive motions pursuant to this Paragraph 18 as desired; provided, however, that each *SIDE* will be limited to a combined total of 40 pages for all opening briefs, a combined total of 40 pages for all answering briefs, and a combined total of 20 pages for all reply briefs regardless of the number of case dispositive motions that are filed.   In the event that a party files, in addition to a case dispositive motion, a Daubert motion to exclude or preclude all or any portion of an expert's testimony, the total amount of pages permitted for all

case dispositive and Daubert motions shall be increased to 50 pages for all opening briefs, 50 pages for all answering briefs, and 25 pages for all reply briefs for each **SIDE**.[1]

    c.    <u>Hearing</u>.

        i.    The Court will hear argument on all pending case dispositive and Daubert motions made pursuant to this Paragraph 18 on **July 23, 2019**. Subject to further order of the Court, each side will be allocated a total of forty-five (45) minutes to present its argument on all pending motions.

19.    <u>Applications by Motion</u>.    Except as otherwise specified herein, any application to the Court shall be by written motion filed with the Clerk.    Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

20.    <u>Pretrial Conference</u>.    On **October 14, 2019**, the Court will hold a pretrial conference in Court with counsel beginning at 9am.    Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3).    The parties shall file with the Court the joint proposed final pretrial order with the information required by the form of Revised Final Pretrial Order – Patent, which can be found on the Court's website (www.ded.uscourts.gov), on or before **October 4, 2019**. Unless otherwise ordered by the Court, the parties shall comply with the timeframes set forth in Local Rule 16.3(d)(l)-(3) for the preparation of the joint proposed final pretrial order.

---

[1] The parties must work together to ensure that the Court receives no more than a **_total_** of **_250 pages_** (i.e., 50 + 50 + 25 regarding one side's motions, and 50 + 50 + 25 regarding the other side's motions) of briefing on all case dispositive motions and Daubert motions that are covered by this scheduling order and any other scheduling order entered in any related case that is proceeding on a consolidated or coordinated pretrial schedule.

The parties shall provide the Court two (2) courtesy copies of the joint proposed final pretrial order and all attachments.

As noted in the Revised Final Pretrial Order – Patent, the parties shall include in their joint proposed final pretrial order, among other things:

        a.      <u>a request for a specific number of **hours** for their trial presentations</u>, as well as a requested number of days, based on the assumption that in a typical jury trial day (in which there is not jury selection, jury instruction, or deliberations), there will be 5.5 to 6.5 hours of trial time, and in a typical bench trial day there will be 6 to 7 hours of trial time;

        b.      <u>their position as to whether the Court should allow objections to efforts to impeach a witness with prior testimony</u>, including objections based on lack of completeness and/or lack of inconsistency;

        c.      <u>their position as to whether the Court should rule at trial on objections to expert testimony</u> as beyond the scope of prior expert disclosures, taking time from the parties' trial presentation to argue and decide such objections, or defer ruling on all such objections unless renewed in writing following trial, subject to the proviso that a party prevailing on such a post-trial objection will be entitled to have all of its costs associated with a new trial paid for by the party that elicited the improper expert testimony at the earlier trial; and

        d.      <u>their position as to how to make motions for judgment as a matter of law</u>, whether it be immediately at the appropriate point during trial or at a subsequent break, whether the jury should be in or out of the courtroom, and whether such motions may be supplemented in writing.

21. <u>Motions *in Limine*</u>. Motions *in limine* shall not be separately filed. All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order. Each **SIDE** shall be limited to three (3) *in limine* requests, unless otherwise permitted by the Court. The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three (3) pages of argument and may be opposed by a maximum of three (3) pages of argument, and the side making the *in limine* request may add a maximum of one (1) additional page in reply in support of its request. If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three (3) page submission (and, if the moving party, a single one (1) page reply), unless otherwise ordered by the Court. No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

22. <u>Jury Instructions, Voir Dire, and Special Verdict Forms</u>. Where a case is to be tried to a jury, pursuant to Local Rules 47 and 51 the parties should file (i) proposed voir dire, (ii) preliminary jury instructions, (iii) final jury instructions, and (iv) special verdict forms three (3) business days before the final pretrial conference. This submission shall be accompanied by a courtesy copy containing electronic files of these documents, in WordPerfect or Microsoft Word format, which may be submitted by e-mail to Judge Stark's staff.

23. <u>Trial</u>. This matter is scheduled for a seven to ten-day trial beginning at **9:30 a.m.** on **November 12, 2019**, with the subsequent trial days beginning at 9:00 a.m. Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m. The trial will be timed, as counsel will be allocated a total number of hours in which to present their respective cases.

18

24. <u>Judgment on Verdict and Post-Trial Status Report</u>. Within seven (7) days after a jury returns a verdict in any portion of a jury trial, the parties shall jointly submit a form of order to enter judgment on the verdict. At the same time, the parties shall submit a joint status report, indicating among other things how the case should proceed and listing any post-trial motions each party intends to file.

25. <u>Post-Trial Motions</u>. Unless otherwise ordered by the Court, all **SIDES** are limited to a maximum of 20 pages of opening briefs, 20 pages of answering briefs, and 10 pages of reply briefs relating to any post-trial motions filed by that side, no matter how many such motions are filed.

_Christopher J. Burke_
UNITED STATES DISTRICT JUDGE

{FG-W0429153.}

# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL CONSTRUCTION<br>PRODUCTS LLC, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 15-108-RGA |
| | ) |
| CATERPILLAR INC., KOMATSU AMERICA | ) **JURY TRIAL DEMANDED** |
| CORP., VOLVO CONSTRUCTION | ) |
| EQUIPMENT NORTH AMERICA, LLC and | ) |
| ASSOCIATED AUCTION SERVICES, LLC, | ) |
| doing business as Cat Auction Services, | ) |
| | ) |
| Defendants. | ) |

### JOINT REVISED DISCOVERY PLAN AND PROPOSED SCHEDULING ORDER

Pursuant to Federal Rule of Civil Procedure 26(f), counsel for the parties

conferred by teleconference on October 18, 2016, and by email thereafter. On January 4, 2017,

the parties submitted for the Court's consideration a report containing competing proposed

discovery plans. On February 5, 2017, counsel for the parties attended a Rule 16 conference in

the Court's chambers. There, the Court instructed counsel to confer further and propose a

scheduling order that sequences discovery, and for the parties to appear for another case

management conference to discuss further proceedings in this matter after the first phase of such

discovery. The parties now submit the following revised joint report and proposed scheduling

order for the Court's consideration.

1.      Rule 26(a)(1) Initial Disclosures.  The parties agree to make their initial

disclosures pursuant to Federal Rule of Civil Procedure 26(a)(l) by March 6, 2017.

2.      Joinder of Other Parties and Amendment of Pleadings.  The parties agree

that all motions to join other parties, and to amend or supplement the pleadings, shall be filed on

or before June 23, 2017.

3. Sequenced Discovery Plan.

(a) Phase I Fact Discovery

(i) The scope of Phase I Fact Discovery on liability shall include, subject to any objections made in the ordinary course: (1) the Manufacturer Defendants' alleged agreement to boycott IronPlanet if it continued to do business with ICP, and the communication of that agreement to IronPlanet and/or ICP; (2) the following "plus factors" alleged by ICP in its Amended Complaint that the Court found to be adequately pled to support ICP's group boycott claim: (a) that the threats alleged in paragraphs 100-101 of the Amended Complaint were against each Manufacturer Defendant's self-interest, absent a conspiracy, (b) that the Manufacturer Defendants had a motive to conspire to jointly make the threats alleged in those paragraphs, and (c) that the Manufacturer Defendants' alleged conduct was suggestive of a traditional conspiracy; and (3) Defendants' alleged liability for the claims alleged in Counts 5-12 of the Amended Complaint. Issues of antitrust injury (except insofar as also relevant to a motive to conspire), market definition, and damages are excluded from the scope of Phase I fact discovery. A party may seek Phase I Fact Discovery from any source, including any third party.

(ii) Deadlines for Phase I Fact Discovery:

(a) Phase I document production shall be made on a rolling basis and substantially completed by June 15, 2017.

(b) All fact discovery in Phase I shall be initiated so that it will be completed by August 25, 2017.

(a) Counsel for the parties shall submit a joint status report by September 5, 2017.

-2-

(b) Counsel for the parties shall participate in a status conference in chambers on September 8, 2017, at 10 a.m.

(c) Phase II Fact Discovery

(i) All fact discovery not included in Phase I shall be conducted in Phase II. A party may seek Phase II Fact Discovery from any source, including any third party, after the commencement of Phase II Fact Discovery.

(ii) At or following the status conference currently scheduled for September 8, 2017, the Court shall decide the schedule for Phase II discovery.

(iii) Deadlines for Phase II Fact Discovery

(a) Phase II document production shall be made on a rolling basis and substantially completed within 90 days of the commencement of Phase II Fact Discovery.

(b) All fact discovery in Phase II shall be initiated so that it will be completed within 150 days of the commencement of Phase II Fact Discovery.

(d) Limitations on Discovery:

(i) 30 requests for admission are permitted for each side.

(ii) 15 interrogatories, including contention interrogatories, are permitted for each side.

(iii) Each side is limited to a total of 112 hours of taking testimony of fact witnesses by deposition upon oral examination. Depositions of expert witnesses shall not count toward the 112 hour limit.

4. Disclosure of Expert Testimony.

(a) Plaintiff's initial Federal Rule 26(a)(2) disclosure of expert testimony shall be served 30 days after completion of Phase II Fact Discovery. Defendants'

-3-

disclosures shall be served 75 days after the completion of Phase II Fact Discovery. No other expert reports will be permitted without either the consent of all parties or leave of the Court. Along with the submissions of the expert reports, the parties shall advise of the dates and times of their experts' availability for deposition. Any expert depositions shall be taken no later than 45 days after service of disclosures.

(b)     To the extent any objection to expert testimony is made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702, it shall be made by motion no later than the deadline for dispositive motions set forth in Paragraph 11 herein, unless otherwise ordered by the Court.

5.     Location of Depositions. Any party or representative (officer, director, or managing agent) of a party filing a civil action in this district court must ordinarily be required, upon request, to submit to a deposition at a place designated within this district. Exceptions to this general rule may be made by order of the Court or by agreement of the parties. A defendant who becomes a counterclaimant, cross-claimant, or third-party plaintiff shall be considered as having filed an action in this Court for the purpose of this provision.

6.     Deposition Time. No deposition of a witness may exceed one day of 7 hours, unless by order of the Court or by agreement of the parties. For purposes of this paragraph, all officers, directors, managing agents, or other designated persons testifying on behalf of any organization pursuant to Fed. R. Civ. P. 30(b)(6) shall collectively be considered a single person. Each party may be deposed pursuant to Fed. R. 30(b)(6) for up to 7 hours. To the extent a witness testifies as a 30(b)(6) witness, and the witness is also noticed for deposition in his or her individual capacity, the witness' testimony pursuant to Fed. R. Civ. P. 30(b)(6) shall

-4-

not count against the 7 hours for which the witness may be deposed in his or her individual capacity.

7.    Discovery Matters and Disputes Relating to Protective Order or Protocol for the Preservation and Production of Electronically Stored Information. Should counsel find they are unable to resolve a discovery matter or a dispute relating to a protective order or protocol for the preservation and production of electronically stored information, the parties involved in the dispute shall contact the Court's Case Manager to schedule a hearing. Unless otherwise ordered, by no later than 48 hours prior to the hearing, the party seeking relief shall file with the Court a letter, not to exceed three pages, outlining the issues in dispute and its position on those issues. By no later than 24 hours prior to the hearing, any party opposing the application for relief may file a letter, not to exceed three pages, outlining that party's reasons for its opposition. Should any document(s) be filed under seal, a courtesy copy of the sealed document(s) must be provided to the Court within 1 hour of e-filing the document(s).

If a discovery-related motion is filed without leave of the Court, it will be denied without prejudice to the moving party's right to bring the dispute to the Court through the discovery matters procedures set forth in this Order.

8.    Protocol for the Preservation and Production of Electronically Stored Information. Discovery in this matter will involve the production of computer-based and digital information. Counsel shall confer and attempt to reach an agreement on a stipulated protocol governing preservation and production of electronically stored information, and submit it to the Court within 30 days from the date of entry of an initial scheduling order. Should counsel be unable to reach an agreement on a protocol, counsel must follow the provisions of Paragraph 7 above.

9.     Papers Filed Under Seal.  When filing papers under seal, counsel shall deliver to the Clerk an original and one copy of the papers.  A redacted version of any sealed document shall be filed electronically within 7 days of the filing of the sealed document.

10.    Courtesy Copies.  The parties shall provide to the Court two courtesy copies of all briefs and one courtesy copy of any other document filed in support of any briefs (i.e., appendices, exhibits, declarations, affidavits etc.).  This provision also applies to papers filed under seal.

11.    Case Dispositive Motions.  At the conclusion of Phase I Fact Discovery, Defendants anticipate seeking leave to file summary judgement motions, and Plaintiff anticipates opposing such leave. All case dispositive motions, an opening brief, and affidavits, if any, in support of the motions shall be served and filed on or before the date 45 days after the completion of expert discovery.  No case dispositive motion under Rule 56  may be filed more than ten days before the above date without leave of the Court.

12.    Applications by Motion.  Except as otherwise specified herein, any application to the Court shall be by written motion.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

13.    Pretrial Conference.  On ___TBA___, 2018, the Court will hold a Rule 16(e) final pretrial conference in Court with counsel beginning at __.m.  The parties shall file a joint proposed final pretrial order in compliance with Local Rule 16.3(c) no later than 5 p.m. on the third business day before the date of the final pretrial conference.  Unless otherwise ordered by the Court, the parties shall comply with the timeframes set forth in Local Rule 16.3(d) for the preparation of the proposed joint final pretrial order.

14.    Motions *in Limine*.  Motions *in limine*, other than objections to expert testimony made pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.*,

-6-

509 U.S. 579 (1993), shall not be separately filed. All such *in limine* requests and responses thereto shall be set forth in the proposed pretrial order. Each party shall be limited to three such *in limine* requests, unless otherwise permitted by the Court. The *in limine* request and any response shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three pages of argument and may be opposed by a maximum of three pages of argument, and the party making the *in limine* request may add a maximum of one additional page in reply in support of its request. If more than one party is supporting or opposing an *in limine* request, such support or opposition shall be combined in a single three page submission (and, if the moving party, a single one page reply). No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

         15.    Jury Instructions, Voir Dire, and Special Verdict Forms. Where a case is to be tried to a jury, pursuant to Local Rules 47.1 (a)(2) and 51.1, the parties should file (i) proposed voir dire, (ii) preliminary jury instructions, (iii) final jury instructions, and (iv) special verdict forms no later than 5 p.m. on the third business day before the date of the final pretrial conference. The plaintiff should expect to submit to an email address to be designated each of the foregoing four documents in WordPerfect format.

         16.    Trial. This matter is scheduled for a _____ day _____ trial beginning at 9:30 a.m. on __TBA__, 2018, with the subsequent trial days beginning at 9:30 a.m. Until the case is submitted to the jury for deliberations, the jury will be excused each day at 4:30 p.m. The trial will be timed, as counsel will be allocated a total number of hours in which to present their respective cases.

-7-

David H. Bamberger (*pro hac vice*)
Katherine M. Ruffing (*pro hac vice*)
James F. Reardon (*pro hac vice*)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Telephone: 202.799.4500
Facsimile: 202.799.5500
david.bamberger@dlapiper.com
katie.ruffing@dlapiper.com
james.reardon@dlapiper.com


Robert G. Abrams (*pro hac vice*)
Gregory J. Commins, Jr. (*pro hac vice*)
Danyll W. Foix (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036-5304
Tel: 202.861.1500
rabrams@bakerlaw.com
gcommins@bakerlaw.com
dfoix@bakerlaw.com


Jeremy Heep (*pro hac vice*)
Robin P. Sumner (*pro hac vice*)
Melissa Hatch O'Donnell (*pro hac vice*)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: 215.981.4000
Facsimile: 215.981.4750
heepj@pepperlaw.com
sumnerr@pepperlaw.com
odonnelm@pepperlaw.com

*/s/ Denise S. Kraft*

Denise S. Kraft (Del. Bar No. 2778)
DLA PIPER LLP (US)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341
denise.kraft@dlapiper.com

*Attorneys for Defendant Komatsu America Corp.*


*/s/ Ryan C. Cicoski*

David J. Baldwin (Del. Bar No. 1010)
Ryan C. Cicoski (Del. Bar. No. 5466)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: 302.984.6000
dbaldwin@potteranderson.com
rcicoski@potteranderson.com

*Attorneys for Defendant Caterpillar Inc.*


*/s/ M. Duncan Grant*

M. Duncan Grant (Del. Bar No. 2994)
James H. S. Levine (Del. Bar No. 5355)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390
grantm@pepperlaw.com
levinejh@pepperlaw.com

*Attorneys for Defendant Volvo Construction Equipment North America, LLC*

Quentin R. Wittrock (*pro hac vice*)
GRAY PLANT MOOTY
500 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612.632.3000
Facsimile: 612.632.4444
quentin.wittrock@gpmlaw.com
kelly.hoversten@gpmlaw.com

*/s/Henry E. Gallagher*
Henry E. Gallagher, Jr. (Del. Bar No. 495)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street
Suite 1400
Wilmington, DE 19801
Telephone: 302.888.6204
Facsimile: 302.654.1005
hgallagher@connollygallagher.com

*Attorneys for Defendant Associated Auction
Services, LLC d/b/a Cat Auction Services*

David Boies (*pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200

James P. Denvir (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Christopher G. Renner (*pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727

*/s/Nathan R. Hoeschen*
John W. Shaw (Del. Bar No. 3362)
Nathan R. Hoeschen (Del Bar. No. 6232)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0701
jshaw@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Plaintiff International Construction
Products LLC*

Dated: February 23, 2017

SO ORDERED this ___23___ day of ___February___, 2017

The Honorable Richard G. Andrews
United States District Judge